FILED
05/17/2017
Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2017 Session

## JAMIE KAY CARDLE v. DANIEL MARCUM CARDLE

**Appeal from the Chancery Court for Sumner County**
**No. 2014-DM-450     Louis W. Oliver, Chancellor**

_____

### No. M2016-00862-COA-R3-CV

_____

Wife filed a complaint for divorce following a fifteen-year marriage.  The trial court granted Wife a divorce, distributed the marital estate, and awarded Wife alimony.  The trial court granted Husband's request to pay the alimony in solido award over a period of six years, with post-judgment interest payable at 10% interest per annum.  Husband appeals the division of some of the marital assets and debts, the award of alimony in solido, and the post-judgment interest award.  We affirm the trial court's division of the marital estate and the award of alimony in solido, but we modify the post-judgment interest rate from 10% to 5.50% to conform with the interest on judgments statute, Tenn. Code Ann. § 47-14-121.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Modified in Part and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Daniel Cardle, Gallatin, Tennessee, Pro Se.

Patti B. Garner, Gallatin, Tennessee, for the appellee, Jamie Kay Cardle.

## OPINION

### I. BACKGROUND

Jamie Kay Cardle ("Wife") and Daniel Marcum Cardle ("Husband") were married for fifteen years when Wife filed a complaint seeking a divorce in December 2014. Husband filed an answer and counterclaim seeking a divorce as well.  The parties have two children who are not at issue in this appeal.  The trial court awarded Wife a divorce

in March 2016. The court distributed the marital property and debts between the parties and awarded Wife transitional alimony, rehabilitative alimony, and alimony in solido. The trial court granted Husband's request to pay the alimony in solido in seventy-two equal installments, but noted that the judgment would "carry the standard 10% interest for judgments." Husband claims the trial court erred in its distribution of equity in the marital home, in its award of marital debt to Husband, and in its award of alimony in solido to Wife, including the award of post-judgment interest. Wife argues the trial court should have required Husband to pay the alimony in solido award in one lump sum rather than over time. Wife also seeks an award of her attorney's fees on appeal.

The record includes a transcript of the court's ruling following the trial, but it does not include a transcript of the trial itself. Husband submitted a statement of evidence in accordance with Tennessee Rule of Appellate Procedure 24(c), to which the trial court made "corrections/modifications." Husband's statement of evidence summarizes the testimony of Wife and Husband separately and includes the following relevant provisions:

Wife, Jamie Kay Cardle testified to:

. . . .

2. The appraised value of the marital home being $300,000

3. Receiving pre approval to refinance the marital home through Movement Mortgage

. . . .

7. Distributions from Mr. Cardle's IRA [individual retirement account] were used to pay household expenses in 2014 and 2015.

8. A $10,000.00 IRA distribution in 2009 from Mr. Cardle's IRA was used to pay closing cost for the purchase of the marital home.

9. Receiving a $10,000.00 car accident settlement in 2009

10. $10,000 deposited back to Mr. Cardle's IRA in 2009

11. Having gross monthly income of $2,087 per month

12. Having total monthly expense of $3,043 per month

13. Receiving an hourly wage of $10 per hour at Tots Preschool

14. Reducing her work hours at Tots Preschool in 2015

15. Not receiving a wage increase in 3 years

16. Tots Preschool closing at least 6 weeks a year

17. Starting work with Safe Harbor in 2015

18. Receiving an hourly wage of $12 per hour at Safe Harbor

19. Holding a Cosmetology License

. . . .

21. Receiving financial assistance from [parents] James and Linda Montgomery

22. Selling her vehicle to James and Linda Montgomery

23. Receiving daily use of vehicle sold to James and Linda Montgomery

24. James and Linda Montgomery paying her attorney fees

Husband, Daniel Marcum Cardle testified to:

1. Purchase of the marital home at 1031 Addington Rd, Hendersonville, TN 37075 with Jamie Cardle in 2009

2. Making a $10,000.00 premature distribution from his IRA in 2009 to pay for marital home closing costs

3. Informing Mrs. Cardle of his IRA distribution in 2009

4. Mrs. Cardle agreeing to refund Mr. Cardle's [IRA] with a negotiated $10,000.00 insurance settlement received in 2009 in order to avoid taxes on Mr. Cardle's premature IRA distribution

5. Additional premature distribution[s] from Mr. Cardle's IRA were made in 2012, 2013, and 2014 totaling $63,366

6. The premature IRA distributions were subject to taxes and penalties

- 3 -

7. Distributions were deposited into the marital joint checking account used to pay marital expenses including the home mortgage

8. Taxes were filed jointly throughout the marriage including 2012, 2013, and 2014

9. The unpaid 2014 tax obligation was $5,047.45

10. Having gross monthly income of $6,026 per month

11. Having net monthly income of $4,327.16

12. Having total monthly expenses of $3,153.33

13. The remaining balance on the marital home property was $227,461, as of January 13, 2016.

The trial court corrected and modified Husband's statement, in relevant part, as follows:

9. Wife received a $10,000.00 accident settlement in 2009. Wife desired to use the funds for a hot tub to treat her back injury and for a fence for the marital home to comply with the homeowners association rules.

10. Husband deposited Wife's $10,000.00 accident settlement into Husband's IRA. Wife did not know at the time of any tax consequences regarding the withdrawal of IRA contributions.

12. Wife has total monthly expenses of $3,043.00 per month which she can not afford.

19. Wife holds a cosmetology license in California. Wife is unsure of what measure would have to be taken to transfer the cosmetology license to Tennessee.

21. Wife's parents James and Linda Montgomery have assisted many times during the marriage in that Husband refused to provide for necessities. Clothing came from Goodwill. Children need more than one pair of shoes. Food is a main item Husband refused to pay. Husband was loud to get point across and would slap the table. Wife would let him go and not object to husband's directives. Financial assistance from James and Linda Montgomery was noted on the checks as loans.

- 4 -

22. Wife sold her vehicle to James and Linda Montgomery for the amount owed on the car loan in order to reduce her expenses in qualifying for a loan to refinance the marital home. James and Linda Montgomery allowed the Wife to continue to use the vehicle sold to them.

24. James and Linda Montgomery have paid Wife's Attorney fees until Wife can afford to pay them back.

The trial court added the following to the end of its correction/modification of Husband's statement of evidence:

Husband further filed a Motion for Corrections to Final Order of Divorce on March 24, 2016, which [the] Court considered as a Motion to Alter or Amend. At the hearing on the motion on April 4, 2016, Husband stated in his Pro Se argument that prior to the motion being considered by the Court the Husband had accepted a check for his equity in the marital home in the amount as ordered by the Court, had negotiated the check into his personal account, and had signed a quit claim deed conveying his interest in his marital home. The Court entered an Order denying that portion of the husband's motion for the reasons stated in the Order filed April 13, 2016.[1]

## II. ANALYSIS

Appellate courts give "great weight" to a trial court's decision dividing marital assets, and "'we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)). With this in mind, we conduct a de novo review of the trial court's findings of fact, accompanied by a presumption of correctness of the trial court's findings unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Keyt*, 244 S.W.3d at 327; *Conley v. Conley*, 181 S.W.3d 692, 695 (Tenn. Ct. App. 2005). Evidence preponderates against a trial court's finding of fact if it supports a different finding of fact more convincingly. *Sattler v. Sattler*, No. M2007-02319-COA-R3-CV, 2008 WL 4613589, at *3 (Tenn. Ct. App. Oct.

---

[1]In its April 13, 2016, order, the trial court wrote:

Husband's request to modify the court's calculation regarding the division of the equity is hereby denied based upon the fact that the Court set forth careful consideration in the Final Order of Divorce, gave Husband the benefit of the doubt with regard to multiple items he requested and finally, Mr. Cardle has already negotiated a check for his portion of the equity, and conveyed his interest in the marital home to Wife. Therefore, the Court denies Husband's request to modify the amount of equity awarded to Husband.

13, 2008).  Questions of law enjoy no presumption of correctness. *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

A.  Marital Home

Husband disputes the trial court's distribution of the parties' equity in the marital home and the court's deduction of eight percent from the house's value to account for closing costs and a realtor's fee in the event the house was sold on the market.  The record reveals that Husband filed a motion on March 20, 2015, in which he asked the trial court to order Wife to put the marital home on the market.  The reasons Husband gave for his motion were that (1) the marital home was an expense that could not be maintained long term during the divorce proceedings or afterwards and (2) he did not believe Wife would be able to refinance the house without his assistance.  The trial court held a hearing on this motion on April 6, 2015, and the court determined that "further review" was necessary before ruling on Husband's motion.  The court stated that it would rule on the motion once the parties determined the house's value, the parties' equity in the house, and Wife's ability to refinance the house.

Wife had an estimated settlement statement prepared shortly after that hearing, and Husband then filed a motion on June 19, 2015, seeking to have his motion to sell the marital home placed back on the docket.  The trial court held another hearing on July 15, 2015, and at this hearing the court reserved ruling on the motion until the final hearing in the case.  After the court issued its ruling, Husband filed a motion on August 21, 2015, asking the court to reconsider his motion to sell the marital home.  Husband then filed the exact same motion six days later, on August 27, 2015.  The court then held another hearing on October 27, 2015, and as a result of hearing testimony from a third party, the court determined that Wife had the "apparent ability to refinance the marital home but held it under advisement for determination at the final hearing."

The trial court addressed the marital home in its oral ruling from the bench on February 4, 2016.  The court stated:

> The parties agreed and stipulated to an appraisal on the property. The appraisal was conducted by Gregory W. Easter. As of November the 20th, 2015, Mr. Easter indicated that the appraised market value of the property was $300,000 by sales comparison approach. And by cost approach his opinion was $319,790. The Court utilized the sales comparison approach in that that is likely to reflect the actual market value of the property in that that's based upon what other properties similar in nature are being sold for.
>
> . . . .

Now, the Court also recognizes that that equity in the property could not be obtained without the property being marketed and sold. The Court therefore reduces the appraised value by 8 percent. That 8 percent is based upon a 6 percent real estate commission and 2 percent in closing expenses and title insurance that would be incurred should the property be sold. If the Court should order the sale of the property those expenses would be incurred; therefore, the Court has determined that the net value of the property is $276,000. That's $300,000 less the 8 percent, which is $24,000, leaving a balance of $276,000. Subtracting the balance of $227,461, the Court finds that the remaining equity balance -- net equity would be $48,539. Therefore, dividing that equity by two, the husband's equity and the wife's equity in the property each would be $24,269.50 rounded to $24,270 each.

Husband contends that the trial court erred by deducting eight percent from the $300,000 valuation before determining the parties' equity in the house. The basis for Husband's argument is that "there was no proof of such expense presented at trial. It is undisputed that Wife had been approved for the loan to purchase Husband's interest and the home was not listed for sale."

The statement of evidence does not reflect that Wife had been "approved for a loan" to purchase Husband's interest in the marital home; rather, the statement indicates that Wife testified she had received "pre approval to refinance the marital home." In the statement of evidence, the court noted that at a hearing on April 6, 2016, following the trial, Husband stated that he "had accepted a check for his equity in the marital home in the amount as ordered by the Court, had negotiated the check into his personal account, and had signed a quit claim deed conveying his interest in his marital home." The record does not reflect, however, whether Wife sold the house or obtained money to pay Husband the amount of equity the court awarded him from a refinance or some other source.

The statement of evidence is the only record of evidence we have to determine whether the trial court erred in deducting eight percent from the house's market value before determining the parties' equity in it. *See Quinn v. Diehl*, No. M2013-00326-COA-R3-CV, 2014 WL 5512938, at *7 (Tenn. Ct. App. Oct. 31, 2014) (explaining that Court of Appeals cannot consider facts alleged by appellant that are not supported by statement of evidence when no transcript is available). In its Final Order of Divorce, the trial court directed Wife to place the marital home "on the real estate market" to sell if she was unable to refinance the house and pay Husband his net equity within 120 days of the entry of the order. Because the statement of evidence does not reflect that Wife would not incur a loss of eight percent of the house's value following the trial, Husband is unable to show that the record preponderates against the trial court's decision to deduct eight percent from the marital home's value before determining the parties' equity. As a

result, we conclude the trial court did not err in deducting eight percent from the house's valuation before determining the parties' equity in it.

Husband also contends the trial court erred in deducting $10,000 from his portion of the equity in the marital home and awarding that amount to Wife. The statement of evidence reflects that Wife received a $10,000.00 accident settlement in 2009; that she wanted to use that money to pay for a hot tub to treat her back injury as well as to pay for a fence for the marital home; and that Husband deposited Wife's $10,000 check into his IRA. After the trial court initially determined that each party's equity in the marital home was $24,270, the court modified the portion awarded to Husband to account for the $10,000 personal injury settlement Wife received in 2009 that Husband deposited into his IRA. In its oral ruling from the bench, the court explained:

> [T]he Court does find that the $10,000 awarded the wife as funds due her as a result of an automobile accident should remain hers. The testimony was that the money was withdrawn from the IRA in the amount of $10,000 in order to make the down payment or meet expenses on the purchase of the marital home. Then when the wife received her $10,000 that money was deposited back into an IRA in order to avoid a tax penalty. And subsequently the Court can only infer and presume that this money was later expended out for family expenses. Therefore, this $10,000 is subtracted. And therefore, the husband's interest in the marital property is $14,270.

Although the trial court did not use the term "separate property" to describe the $10,000 the court awarded to Wife, that is essentially the determination the court made. Before a trial court makes an equitable division of the marital estate, the court must first identify all of the parties' assets as either separate or marital. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010)); *see also Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). "Separate property" is defined in the "Divorce and Annulment" chapter of Title 36 of the Tennessee Code (titled "Domestic Relations") to include, *inter alia*, "[p]ain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages." Tenn. Code Ann. § 36-4-121(b)(2)(E). Courts can only "equitably divide, distribute or assign the marital property between the parties." Tenn. Code Ann. § 36-4-121(a)(1). Courts cannot equitably distribute separate property. *Keyt*, 244 S.W.3d at 328; *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). Husband does not address Tenn. Code Ann. § 36-4-121 in his brief and makes no argument one way or the other with regard to whether the $10,000 at issue constitutes Wife's separate property. We conclude the $10,000 constitutes Wife's separate property and affirm the trial court's decision to return that amount to Wife by deducting that amount from Husband's portion of the equity in the marital home.

B. <u>Marital Debts</u>

Husband next argues the trial court erred by making him responsible for paying the parties' 2014 federal tax obligation in addition to the fee owing to the accountant the parties used to prepare their tax forms. The trial court addressed the parties' marital debts in its ruling from the bench as follows:

> The debts. The Court identifies two debts that were testified to. The 2014 taxes that were jointly filed, there's approximately a debt of $4,864 plus interest. That debt is to be paid by Husband. It's my understanding -- the Court's understanding that there had been a payment plan worked out on that, and the husband will be responsible for complying with the terms of that, the payment plan, and paying those taxes and will indemnify and hold Wife harmless. Husband is likewise responsible for the payment of the debt to John Young, Certified Public Accountant. Mr. Young's obligation was for preparation of certain information on behalf of the parties, and Husband will be responsible for that. The Court does not know what the debt is; however, it was testified that Mr. Young had not been paid.

The trial court is required to divide the marital estate equitably, but this does not necessarily mean the division must be equal. *Larsen-Ball*, 301 S.W.3d at 231; *Kinard*, 986 S.W.2d at 230. A trial court is to consider the following statutory factors when dividing the marital estate:

> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

Appellate courts "ordinarily defer" to the trial court's distribution of a marital estate unless it is inconsistent with the statutory factors set forth above. *Kinard*, 986 S.W.2d at 231. At the time of trial, the parties had been married for seventeen years. Husband has a college degree, and the evidence showed he earned about three times as much as Wife, who does not have a college degree. Wife did not earn enough to cover her expenses, and she relied on her parents to help out financially when Husband refused to provide necessities during the marriage. Husband earned more than he needed to cover his expenses. Husband does not argue on appeal that the trial court's distribution of the marital estate was inconsistent with the statutory factors, and a review of the statement of evidence leads us to conclude that the trial court's ruling is consistent with these factors.[2] Therefore, we affirm the trial court's allocation of the marital debt to Husband.

---

[2]In addition, we find Husband failed to comply with the requirements set forth in the Tennessee Rules of Appellate Procedure concerning the appellant's brief. Tennessee Rule of Appellate Procedure 27(a)(7)(A) requires that an appellant's brief contain an argument in which the appellant sets forth his or her contentions with respect to each issue, "the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Husband failed to include in his brief reasons why the trial court's allocation of the marital debts to him was inequitable, he failed to cite to authorities in support of his argument, and he failed to provide

C.  Alimony in Solido

Husband does not contest the trial court's award of transitional and rehabilitative alimony, but he does challenge the court's award to Wife of alimony in solido.  Husband also contests the interest rate of 10% that the court added to its judgment for alimony in solido.

The statute addressing alimony lists the following factors a court is to consider when determining whether an award of "support and maintenance" is appropriate:

(1)  The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2)  The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5)  The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)  The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)  The separate assets of each party, both real and personal, tangible and intangible;

(8)  The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions,

---

appropriate citations to the record.

- 11 -

and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). The trial court referenced these factors in its oral ruling as follows:

> The Wife requested all forms of alimony. The Court considered the factors set forth in T.C.A. 36-5-121. The Court finds that the Husband has traditionally made substantially more income than the Wife. Husband's gross income is $6,026.00 monthly and Wife's income is $2,087.00 monthly. Husband has a college degree and Wife does not. Husband has had opportunity to make substantially more income and Wife's education is presently limited and thus her earning capacity is limited, as a result. The parties have been married for 17 years. The Court determined that factors 4 through 8 do not apply. The parties have enjoyed a reasonable standard of living. In factor 10, neither party is favored and the Court finds that factor 11, does not apply.

The court awarded Wife transitional and rehabilitative alimony on February 4, 2016, and it reserved ruling on Wife's request for attorney's fees, which the court explained would be considered an award of alimony in solido. The court then held a hearing in June 2016 to consider both Husband's and Wife's requests for attorney's fees. In a written order issued on June 29, 2016, the court denied Husband's request for fees. The court reviewed Wife's attorney's fee affidavit, approved the hourly rate of $250, deducted some itemized fees and court reporter costs, and concluded that $12,239.29 was "fair and reasonable" in the circumstances. The court granted Husband's request to make seventy-two equal payments to Wife totaling this amount, and the court added that "the judgment will carry the standard 10% interest for judgments."

"[T]rial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011); *see Owens v. Owens*, 241 S.W.3d 478, 496 (Tenn. Ct. App. 2007) (explaining that appellate court will not interfere with trial court's award of alimony in solido if the trial court appropriately exercised its discretion based on facts of the case). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85

- 12 -

(Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under this standard of review, a trial court's ruling will not be reversed if "'reasonable minds can disagree as to [the] propriety of the decision made.'" *Id.* (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)); *see also State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).

Alimony in solido is a form of long-term support and may include attorney's fees. Tenn. Code Ann. § 36-5-121(h)(1). "An award of attorney's fees to an economically disadvantaged spouse is usually characterized as alimony in solido." *Owens*, 241 S.W.3d at 495. It is not modifiable in the absence of the parties' mutual agreement, and it does not terminate upon the remarriage or death of the recipient or the obligor. Tenn. Code Ann. § 36-5-121(h)(2)-(3). "Alimony in solido is an award of a definite sum of alimony and 'may be paid in installments provided the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded.'" *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001) (quoting *Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn. 1999)); *see also* Tenn. Code Ann. § 36-5-121(h)(1); *Gonsewski*, 350 S.W.3d at 108. Alimony in solido can be combined with other types of alimony awards, Tenn. Code Ann. § 36-5-121(d)(5), and it is "often awarded to adjust the division of marital property." *Burlew*, 40 S.W.3d at 472.

Husband contests the court's award of alimony in solido, arguing that "no evidence was presented supporting Wife's claim that attorney fees were a loan from her parents and that she would be required to pay them back." According to Husband's statement of evidence, Wife testified that her parents were paying her attorney's fees. In the trial court's modification and correction of Husband's statement, however, the court wrote: "James and Linda Montgomery have paid Wife's Attorney fees until Wife can afford to pay them back." This statement implies that Wife is, in fact, required to pay her parents back for their payment of her attorney's fees.

Husband also complains about the number of motions Wife filed that unnecessarily drove up the cost of her attorney's fees. The trial court conducted a careful review of Wife's attorney's fee affidavit and deducted certain categories of fees, leaving only those fees the court found were appropriate. The trial court explained that it "thoroughly reviewed the itemized fees," and that it was "familiar with what it takes to prepare this type of matter for trial." The statement of evidence shows that Wife's income is insufficient to cover her expenses and that Husband's income exceeds his expenses. *See Gonsewski*, 350 S.W.3d at 113 (stating that alimony in solido award is appropriate where recipient spouse would have to deplete his or her resources to pay fees and payor spouse has ability to pay fees). Because Husband has not shown that the trial court abused its discretion by awarding Wife alimony in solido, we affirm the trial court's award in the amount of $12,239.29. In light of the statute's explicit allowance that these payments be made in installments, Tenn. Code Ann. § 36-5-121(h)(1), we reject Wife's

argument that the trial court erred by allowing Husband to make these payments in seventy-two equal installments over the course of six years.

We now turn to Husband's challenge to the trial court's award of interest to Wife's alimony in solido award. Tennessee Code Annotated section 47-14-122 provides that "[i]nterest *shall be computed on every judgment* from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial." (Emphasis added.) Courts do not have discretion about whether to award interest on judgments; it is required by the statute. *See Vooys v. Turner*, 49 S.W.3d 318, 321-22 (Tenn. Ct. App. 2001) (stating that statute requires courts to add post-judgment interest to judgments).

The statute that addresses post-judgment interest is Tenn. Code Ann. § 47-14-121, which was amended in 2012. Before the amendment, the statute set the rate of interest on judgments at ten percent per annum. Tenn. Code Ann. § 47-14-121 (effective March 27, 2008 to June 30, 2012). Starting on July 1, 2012, and continuing to the present time, however, the interest rate on judgments fluctuates and is now calculated as follows:

(a) Except as set forth in subsection (c),[3] the interest rate on judgments per annum in all courts, including decrees, shall:

(1) For any judgment entered between July 1 and December 31, be equal to two percent (2%) less than the formula rate per annum published by the commissioner of financial institutions, as required by § 47-14-105, for June of the same year; or

(2) For any judgment entered between January 1 and June 30, be equal to two percent (2%) less than the formula rate per annum published by the commissioner of financial institutions, as required by § 47-14-105, for December of the prior year.

Tenn. Code Ann. § 47-14-121. The statute continues and directs the administrative office of the courts to "calculate the interest rate on judgments that applies for the new six-month period pursuant to subsection (a)" and to "publish that rate on the administrative office of the courts' web site." Tenn. Code Ann. § 47-14-121(b)(1)-(2).

---

[3]Subsection (c) provides that where a judgment is based on a statute or a writing that fixes an otherwise acceptable rate of interest, the judgment will bear that other rate. Tenn. Code Ann. § 47-14-121(c). The statute at issue here does not specify a particular rate of interest to apply to alimony judgments. Tennessee Code Annotated section 36-5-121(o) provides: "Any order of alimony that has been reduced to judgment shall be entitled to be enforced as any other judgment of a court of this state and shall be entitled to full faith and credit in this state and in any other state."

- 14 -

The trial court filed its order directing Husband to pay Wife's attorney's fees as alimony in solido on June 29, 2016. According to the administrative office of the courts' web site, the interest rate applicable to judgments entered between January 1 and June 30, 2016, is 5.50% per annum. https://www.tncourts.gov/node/1232344. Thus, we remand the case to the trial court with directions to modify its order awarding Wife alimony in solido, dated June 29, 2016, to lower the interest rate on the judgment from 10% per annum to 5.50% per annum so that it complies with the version of Tenn. Code Ann. § 47-14-121 applicable at the time of trial.

Wife asks for an award of attorney's fees she incurred to defend Husband's case on appeal. In domestic relations cases, appellate courts can exercise their discretion to award attorney's fees incurred on appeal to the economically disadvantaged spouse as additional support. *Andrews v. Andrews*, 344 S.W.3d 321, 340 (Tenn. Ct. App. 2010); *Brown v. Brown*, No. M2008-00788-COA-R3-CV, 2009 WL 1362307, at *4 (Tenn. Ct. App. May 14, 2009). Factors a court considers include the requesting party's ability to pay the fees, the requesting party's success on appeal, and whether the appeal was sought in good faith. *Moses v. Moses*, No. E2008-00257-COA-R3-CV, 2009 WL 838105, at *10 (Tenn. Ct. App. Mar. 31, 2009). We find that such an award is appropriate here and remand this case for a determination of the reasonable amount of Wife's appellate attorney's fees.

## III. CONCLUSION

The judgment of the trial court is affirmed except with respect to the post-judgment interest rate that is to apply to Wife's award of alimony in solido. This matter is remanded with instructions to the trial court to (1) determine Wife's reasonable attorney's fees incurred on appeal, which shall become part of her alimony in solido award, and (2) enter an order modifying the interest rate from 10% to 5.50% per annum on the alimony in solido judgment. Costs of this appeal shall be split equally between the appellant, Daniel Marcum Cardle, and the appellee, Jamie Kay Cardle, for which execution shall issue, if necessary.

_____
ANDY D. BENNETT, JUDGE